ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>     Plaintiff, <br> v. <br> CHRISTOPHER GONZALEZ NUNEZ, <br>     Defendant. | CASE NO. 23-MJ-71223 <br><br> UNITED STATES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRETRIAL DETENTION <br><br> Date:  August 21, 2023 (Detention Hearing) <br> Time:  10:30 a.m. <br> Court:  Honorable Donna M. Ryu |

    Defendant Christopher Gonzalez Nunez is a member of the San Francisco Mission District Norteños with a disturbing history of gang participation, gun possession and manufacturing, and reckless driving. During execution of a federal search warrant this June, agents recovered three firearms, numerous high-capacity magazines, ammunition, and gun assembly tools in his backpack and bedroom. Because Gonzalez Nunez poses a significant danger to the public that cannot be mitigated through conditions of release or with suitable sureties and custodians, he should be detained pending trial.

## BACKGROUND

I.   **OFFENSE CONDUCT**

   A.  **FBI RECOVERS 3 GUNS AND AMMUNITION AT GONZALEZ NUNEZ'S HOUSE**

On June 14, 2023, the FBI executed a federal search warrant at 22835 Woodroe Avenue in Hayward.  When agents arrived at the residence, they observed Gonzalez Nunez coming from the backyard.  When they went to the area of the backyard where he had been observed, agents discovered a backpack and a grocery bag discarded over the fence in the rear of the residence.  Subsequent DNA testing determined that Gonzalez Nunez's DNA was on the straps of the backpack and on several items found inside the backpack.

Inside the backpack, agents recovered three firearms and assorted ammunition.  In the plastic bag next to the backpack were several large-capacity "drum" magazines.  The three firearms found inside Gonzalez Nunez's backpack were:  (1) a 9mm SCCY CPX-2 handgun bearing serial number 941939, (2) an unserialized AR-15 style pistol, and (3) an unserialized Glock-style handgun.  The other gun-related items included:  (1) three AR-style 30-round magazines, (2) six extended pistol magazines, and (3) approximately 25 rounds of loose ammunition.




GOVERNMENT DETENTION MEMORANDUM          2
23-MJ-71223

These firearms were connected to Gonzalez Nunez in several ways. First, all three guns were found inside the backpack, and DNA analysis from swabs of the backpack's straps, zipper, and handle showed "very strong support" for the presence of Gonzalez Nunez's DNA, with the chance of the profile coming from a random person being 1 in 41.2 million. Gonzalez Nunez's DNA was also found on the grips of both the Polymer 80 handgun (beige grip in photo above left) and the partially-assembled assault weapon (pictured upside down toward the bottom of the photo above left), both of which were found inside the backpack. The likelihood ratio for Gonzalez Nunez's DNA on the Polymer 80 was 1 in 881 quadrillion, and likelihood ratio for Gonzalez Nunez's DNA on the assault weapon was 1 in 49.8 billion. His DNA was also found on the gun lock box in which the Polymer 80 was found.

Receipts were also found in Gonzalez Nunez's bedroom that connected him to the firearms found, particularly the serialized SCCY handgun. A receipt from 11 Eleven Tactical in Sparks, Nevada, bore both Gonzalez Nunez's name and signature. When contacted, 11 Eleven Tactical informed agents that Gonzalez Nunez had purchased a number of firearm-related items from them, including a 50-round drum magazine for a SCCY CPX-2 pistol. The purchase was made with a credit card and the name and signature on the receipt were "Christopher Gonzalez." As stated above, a SCCY CPX-2 pistol was found in Gonzalez Nunez's backpack.

In Gonzalez Nunez's bedroom, agents recovered three rounds of ammunition on a dresser, next to indicia (including mail and gun store receipts) that bore his name. The other occupants of the house disclaimed any ownership or possession of items found in Gonzalez Nunez's bedroom. In a box near the bedroom door were several other firearm tools and accessories, including a wrench used for assembling or modifying rifles, a firearm sight adjustment tool, a trigger group, and an empty Tacticon Armament box that matched the grip attached to one of the guns in Gonzalez Nunez's backpack. Several empty Glock gun boxes matching the one found in the backpack were also located in his bedroom.

GOVERNMENT DETENTION MEMORANDUM   3
23-MJ-71223



### B. **CRIMINAL HISTORY & CHARACTERISTICS**

Prior to the June 2023 search, Gonzalez Nunez had been convicted of carrying a concealed firearm under California Penal Code 25400(a)(2) – Carrying a Concealed Firearm. This conviction arose out of a July 15, 2019 search in which Oakland Police Officers recovered a 9mm Glock style handgun with an unserialized Polymer80 frame and a 31-round extended magazine from Gonzalez Nunez's person. Gonzalez Nunez also has an adult misdemeanor conviction for reckless driving on the highway, a juvenile adjudication for possession of concealed firearm (felony), and two juvenile adjudications for bringing weapons to school (misdemeanors). More recently, he was arrested in November 2020 after SFPD officers found a pistol and two pistol magazines concealed under the infotainment system of Gonzalez Nunez's tow truck.




A subsequent search of his residence resulted in the seizure of another magazine, a speed loader, and more ammunition:




But those convictions and arrests just scratch the surface of Gonzalez Nunez's dangerousness. Dating back to at least 2019, Gonzalez Nunez has been an active participant in a Norteno criminal street gang that included Fernando Madrigal and Oscar Guadron Diaz, both of whom have pleaded guilty to racketeering conspiracy and admitted to a total of three murders in *United States v. Madrigal, et al.,* 20-CR-328-WHO. Of note, on the night of July 7, 2019, Gonzalez Nunez was hanging out with Madrigal immediately before—and possible during—the murder of 15-year-old D.H., to which Madrigal has pleaded guilty. Gonzalez Nunez can be seen with Madrigal and Guadron Diaz in a Snapchat video posted that night, and he was a participant in an Instagram group chat with Madrigal and others (Gonzalez Nunez was using his Instagram handle "kildatbitch415"). After the shooting, Gonzalez Nunez identified specific messages in the group chat and told another participant to "delete this" and "this too."[1]



Following the federal indictment of his gang associates in August 2020, Gonzalez Nunez continued to engage in dangerous conduct, including offering guns for sale and driving in sideshows. For example, in January 2023, he posted the photo at right, appearing to advertise a gold-plated assault weapon for sale.

Gonzalez Nunez is also believed to be a frequent participant in vehicle "sideshows," including one in San Francisco in July 2021 where he drove while his significant other leaned out his passenger window armed with an AK-47. Not only does the car match a vehicle that Gonzalez Nunez owned at the time, but Instagram users "tagged" him in photos from the incident and mentioned him by name. Perhaps most tellingly, Gonzalez Nunez posted a photo on his Instagram account of what appears to be

---

[1] This video and Instagram group chat will be provided to the Court and to defense counsel for consideration at the detention hearing. The "deleted" account listed in the Instagram group chat belonged to Fernando Madrigal.

GOVERNMENT DETENTION MEMORANDUM        6
23-MJ-71223

him wearing a t-shirt depicting his significant other leaning out of his car holding the gun.  The original photo is at left, while the photo from Gonzalez Nunez's Instagram account is at right.

 

## ARGUMENT

### I. LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Motamedi*, 767 F.2d at 1406.

"[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)."  *See United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  The four factors to be considered under § 3142(g) are:  (1) the nature and circumstances of the offense

charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II. GONZALEZ NUNEZ POSES AN UNMITIGABLE DANGER TO THE COMMUNITY

Consideration of the § 3142(g) factors demonstrates that detention is appropriate in this case based on Gonzalez Nunez's danger to the community.

First, the offense conduct is very serious. Despite his felony prohibition, Gonzalez Nunez has continued to arm himself with numerous loaded firearms. He had three firearms, including an assault weapon, and numerous extended magazines in his backpack, as well as countless gun assembly tools and gun store receipts in his bedroom. Concerningly, many of the items referenced in those gun store receipts were not recovered during a thorough search of his house. The missing items and his Instagram posts strongly suggest that he was selling or supplying firearms to other individuals. The nature and circumstances of the offense support detention. *See* § 3142(g)(1).

Gonzalez Nunez's history and characteristics likewise support detention. He has been an active participant in a Norteño criminal street gang going back at least four years, and to the extent he has ever stepped back from active gang conduct, it was only after his close associates were indicted federally for multiple murders. He was with Fernando Madrigal shortly before Madrigal murdered an unarmed minor, and he instructed gang associates to delete messages from an incriminating Instagram group chat immediately following that shooting. This past gang conduct, combined with his continued possession, assembly, and apparent distribution of firearms (including untraceable ghost guns) poses an unmitigable danger to the public. *See* § 3142(g)(4).

The evidence against Gonzalez Nunez is also quite strong. Three guns were found in a backpack that bore his DNA, and his DNA was located on a gun and numerous other items inside the backpack. The charged ammunition was found in his bedroom, next to his driver's license and numerous other

items in his name. He is a convicted felon who was advised at the time of his prior conviction that he faced a three-year prison sentence, leaving no doubt that he knew of his prohibited status. The strength of the evidence, considered along with the other § 3142 factors, shows by clear and convincing evidence that there are no conditions that can adequately mitigate Gonzalez Nunez's threat to the public.

Finally, while no sureties or custodians have been proposed as of the time of this filing, the government has deep concerns about the people the defendant is most likely to offer. He was living with his mother and stepfather at the time of the charged conduct, and evidence of his gun and ammunition possession was on open display in the house. If they could not prevent his unlawful gun and ammunition possession then, there is little reason to think they could do so now. Similarly, Gonzalez Nunez's significant other has a criminal history of her own, including a battery conviction and arrest for assault causing great bodily injury, robbery, and domestic violence. And as noted above, she is believed to be the individual pictured holding an AK-47 while leaning out of Gonzalez Nunez's car during a sideshow in San Francisco in 2021. For these reasons, the government doubts whether these individuals could exert the required moral suasion over Gonzalez Nunez to ensure he ceases his criminal conduct and complies with any terms of pretrial supervision.

## CONCLUSION

Given the lack of conditions that can reasonably assure the safety of the community, the government respectfully requests that Gonzalez Nunez be detained pending trial.

DATED: August 18, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Leif Dautch*
LEIF DAUTCH
Assistant United States Attorney