```
ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    Leif.Dautch@usdoj.gov

Attorneys for United States of America
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>CHRISTOPHER GONZÁLEZ NUNEZ,<br><br>    Defendant. | CASE NO. 23-CR-296-AMO<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: March 4, 2024<br>Time: 2:00 p.m.<br>Judge: Hon. Araceli Martínez-Olguín |

## I.    INTRODUCTION

Defendant Christopher González Nunez (González) appears before this Court for sentencing having pleaded guilty to possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1).  This charge arose from a June 2023 search, during which agents recovered three firearms, numerous high-capacity magazines, ammunition, and gun assembly tools in González's backpack and bedroom.  In addition to a history of illegal gun possession, González has been involved with the San Francisco Mission District Norteños, using the moniker "G-Man."  Balancing this serious conduct and history against González's quick acceptance of responsibility and mitigating personal factors, the parties now jointly recommend (with agreement from Probation) a 24-month custodial sentence, to be followed by three years of supervised release, a $100 special assessment, and forfeiture of the guns and ammunition.

## II.  OFFENSE CONDUCT

On June 14, 2023, the FBI executed a federal search warrant at González's residence in Hayward.  Presentence Report ("PSR") at ¶ 6.  When agents arrived at the residence, they observed González coming from the backyard.  *Id*. at ¶ 7.  When agents went to the area of the backyard where he had been observed, they discovered a backpack and a grocery bag discarded over the fence.  Subsequent DNA testing determined that González's DNA was on the straps of the backpack and on several items inside the backpack.  *Id*.

From the backpack, agents recovered three firearms and assorted ammunition.  PSR ¶ 7.  In a plastic bag next to the backpack were several large-capacity "drum" magazines.  The three firearms found inside González's backpack were:  (1) a 9mm SCCY CPX-2 handgun bearing serial number 941939, (2) an unserialized AR-15 style pistol, and (3) an unserialized Glock-style handgun.  The other gun-related items included:  (1) three AR-style 30-round magazines, (2) six extended pistol magazines, and (3) approximately 25 rounds of loose ammunition.  *Id*.

 

1    These firearms were connected to González in several ways.  First, all three guns were found inside the backpack, and DNA analysis from swabs of the backpack's straps, zipper, and handle showed "very strong support" for the presence of González's DNA, with the chance of the profile coming from a random person being 1 in 41.2 million.  PSR ¶ 7.  González's DNA was also found on the grips of both the Polymer 80 handgun (beige grip in photo above left) and the partially-assembled assault weapon (pictured upside down toward the bottom of the photo above left), both of which were found inside the backpack.  The likelihood ratio for González's DNA on the Polymer 80 was 1 in 881 quadrillion, and likelihood ratio for González's DNA on the assault weapon was 1 in 49.8 billion.  His DNA was also found on the gun lock box in which the Polymer 80 was found.



Receipts were also found in González's bedroom that connected him to the firearms found, particularly the serialized SCCY handgun.  A receipt from 11 Eleven Tactical in Sparks, Nevada, bore both González's name and signature.  PSR ¶ 8.  When contacted, 11 Eleven Tactical informed agents that González had purchased a number of firearm-related items from them, including a 50-round drum magazine for a SCCY CPX-2 pistol.  The purchase was made with a credit card and the name and signature on the receipt were "Christopher González."  *Id*.  As stated above, a SCCY CPX-2 pistol was found in González's backpack.

In González's bedroom, agents recovered three rounds of ammunition on a dresser, next to indicia (including mail and gun store receipts) that bore his name.  PSR ¶ 8.  The other occupants of the house disclaimed any ownership or possession of items found in González's bedroom.  In a box near the bedroom door were several other firearm tools and accessories, including a wrench used for assembling or modifying rifles, a firearm sight adjustment tool, a trigger group, and an empty Tacticon Armament box that matched the grip attached to one of the guns in González's backpack.  *Id*.  Several empty Glock gun boxes matching the one found in the backpack were also located in his bedroom.



### III. GONZÁLEZ'S CRIMINAL HISTORY

Prior to the June 2023 search, González had been convicted of carrying a concealed firearm under California Penal Code 25400(a)(2). This conviction arose out of a July 15, 2019 search in which Oakland Police Officers recovered from González's person a 9mm Glock-style handgun with an unserialized Polymer 80 frame and a 31-round extended magazine. PSR ¶ 31.

González also has an adult misdemeanor conviction for reckless driving on the highway, a juvenile adjudication for possession of a concealed firearm (felony), and two juvenile adjudications for bringing weapons to school (misdemeanors). PSR ¶¶ 27-28, 30. More recently, he was arrested in November 2020 after SFPD officers found a pistol and two pistol magazines concealed under the entertainment system of González's tow truck. PSR ¶ 34. A subsequent search of González's residence resulted in the seizure of another magazine, a speed loader, and more ammunition.

González has engaged in other dangerous conduct as well, including offering guns for sale over social media and driving in sideshows, including one incident in San Francisco in July 2021 where he drove while his significant other leaned out his passenger window armed with an AK-47.

## IV. PSR AND APPLICABLE GUIDELINES CALCULATION

González pleaded guilty to Count One of the Information pursuant to a Rule 11(c)(1)(C) plea agreement, whereby the parties agreed to jointly recommend a sentence of 24 months. PSR ¶ 3. The government agrees with Probation that the Base Offense Level is 20, based on González's unlawful possession of a semiautomatic firearm capable of accepting a large-capacity magazine (namely, a 50-round drum magazine that González had purchased). PSR ¶ 23; U.S.S.G. ¶ 2K2.1(a)(3). With a three-point reduction for acceptance of responsibility, the Total Offense Level is 17. PSR ¶ 25. The government likewise agrees with Probation that González has two criminal history points, placing him in Criminal History Category II. PSR ¶ 33. A Total Offense Level of 17 and CHC II yields an advisory Guidelines range of 27-33 months. PSR ¶ 55. Probation joins the parties' recommendation of a mild downward variance to 24 months.

## V. DISCUSSION

### A. Applicable Sentencing Factors

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id*. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5)   the need to provide restitution to any victims of the offense.

### B.   A Sentence of 24 months Is Warranted Under 18 U.S.C. § 3553(a)

The government believes that a custodial sentence of 24 months strikes the right balance between punishing and deterring Mr. González's criminal conduct, while crediting his swift acceptance of responsibility and desire to provide for his young family.

To begin, González's offense conduct is very serious. Despite his felony prohibition, González continued to arm himself with numerous loaded firearms. He had three guns, including an assault weapon, and numerous extended magazines in his backpack, as well as gun assembly tools and gun store receipts in his bedroom. Concerningly, many of the items referenced in these gun store receipts were not recovered during a thorough search of his house. The missing items and his Instagram posts strongly suggest that he was selling or supplying firearms to other individuals. The nature and circumstances of the offense thus warrant a substantial prison term. *See* 18 U.S.C. § 3553(a)(1).

González's history and characteristics cut both ways. On the one hand, he has been associated with the San Francisco Mission District Norteños dating to at least 2019, appearing in social media videos and group chats with individuals charged in a federal racketeering case (*United States v. Madrigal, et al.*, 20-CR-328-WHO). To the extent González stepped back from active gang participation, it was only after his close associates were indicted federally for multiple murders. On the other hand, González has shown signs of maturation and development. He has been gainfully employed as a tow truck operator. He has a young child. He agreed to waive detention and plead guilty shortly after being charged federally. And when the government took the risk of agreeing to a short-term release so that González could spend Christmas with his young child and family, there were no issues during his release or with his self-surrender.

Accordingly, the government believes that the parties' joint sentencing recommendation of 24 months appropriately balances the section 3553(a) factors and adequately protects the public. Given that González has been in custody since August 2023, the parties are essentially seeking one additional year of custody, an appropriate sanction for González's stockpiling of weapons, but one that still provides a pathway to continued rehabilitation if González chooses to pursue it.

## VI. CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court accept the plea agreement and impose the parties' joint recommended sentence of 24 months' imprisonment, three years of supervised release, a $100 special assessment, and forfeiture of the firearms, ammunition, and magazines involved in the charged crime.

DATED: February 26, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

*/s/ Leif Dautch*
LEIF DAUTCH
Assistant United States Attorney